IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DAVID GOOLSBY                                                        PLAINTIFF


          v.                         CIVIL NO. 18-2076


NANCY A. BERRYHILL, Commissioner
Social Security Administration                              DEFENDANT


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, David Goolsby Jr., brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claims for a period of disability and disability insurance benefits

(DIB) under the provisions of Title II of the Social Security Act (Act).  In this judicial review,

the Court must determine whether there is substantial evidence in the administrative record to

support the Commissioner's decision.  See 42 U.S.C. § 405(g).

I.     **Procedural Background:**

Plaintiff protectively filed his current application for DIB on May 10, 2016, alleging

an inability to work since April 1, 2011,[1] due to degenerative disc disease of the cervical and

lumbar spine, rheumatoid arthritis, high blood pressure, a bulging disc, and numbness of the

hand and right shoulder.  (Tr. 59).  For DIB purposes, Plaintiff maintained insured status

---

[1] At the administrative hearing held on June 1, 2017, Plaintiff, through his counsel, amended Plaintiff's alleged onset date to
November 22, 2014.  (Tr. 10, 30).

1

through December 31, 2016.  (Tr. 10, 170).  An administrative hearing was held on June 1, 2017, at which Plaintiff appeared with counsel and testified. (Tr. 24-56).

By written decision dated August 9, 2017, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe.  (Tr. 12). Specifically, the ALJ found that through the date last insured Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine (L3-4, L4-5, L5-S1); degenerative disc disease of the cervical spine (status post fusion C3-4, C4-5, C5-6, C6-7); degenerative joint disease of the left elbow; and anxiety.  However, after reviewing all of the evidence presented, the ALJ determined that through the date last insured Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 12).  The ALJ found that through the date last insured Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except simple tasks, simple instructions, and incidental contact with the public.

(Tr. 14).  With the help of a vocational expert, the ALJ determined that through the date last insured, Plaintiff could perform work as a palletizer, a machine egg washer, a housekeeping cleaner, and a toll collector.  (Tr. 17).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on March 14, 2018.  (Tr. 1-6).  Subsequently, Plaintiff filed this action. (Doc. 1).  Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation.  (Docs. 16, 17).

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    **Evidence Presented:**

At an administrative hearing held before the ALJ on June 1, 2017, Plaintiff, who was forty-eight years of age, testified that he obtained a high school education.  (Tr. 30-31).  The record reflects Plaintiff's past relevant work consists of work as a deep fry cook, a painting machine operator, a furnace mason and a brick layer.  (Tr. 50).

Prior to the relevant time period, Plaintiff was treated for various impairments to include, but not limited to neck pain, back pain, arm pain, and high blood pressure.

The pertinent medical evidence before the ALJ during the relevant time period reflects the following.  Progress notes dated December 4, 2014, revealed Plaintiff was in to discuss his cervical spine x-rays.  (Tr. 370). Upon examination, Dr. William A. Isely noted Plaintiff appeared uncomfortable due to pain.  Plaintiff also exhibited neck and back tenderness with decreased range of motion.  Dr. Isely assessed Plaintiff with back pain and neck pain and prescribed medication.

On January 15, 2015, Plaintiff underwent a MRI of the cervical spine that revealed congenitally shortened pedicles, multilevel disc osteophyte ridges, degenerative disc disease and spinal and foraminal stenosis most notably at C5-C6 and C6-C7.  (Tr. 334).

Progress notes dated January 15, 2015, revealed Plaintiff was in for a follow up and medication refill. (Tr. 368-369).  Dr. Isely noted Plaintiff had undergone a MRI due to progressive cervical and lumbar pain.  Upon examination, Dr. Isely noted Plaintiff appeared uncomfortable due to pain.  Plaintiff also exhibited neck and back tenderness with decreased range of motion.  Dr. Isely assessed Plaintiff with back pain, neck pain and anxious depression and prescribed medication.

3

Progress noted dated February 24, 2015, revealed Plaintiff was in for medication refills. (Tr. 367-368). Treatment notes indicated Plaintiff's blood pressure was high. Plaintiff reported he was irritated and stressed. Dr. Isely noted Plaintiff would have a surgery consult in March. Upon examination, Dr. Isely noted Plaintiff appeared uncomfortable due to pain. Plaintiff also exhibited neck and back tenderness with decreased range of motion. Dr. Isely assessed Plaintiff with back pain, anxiety and depression, neck pain and chronic pain and prescribed medication.

Progress notes dated April 15, 2015, revealed Plaintiff was in for medication refills. (Tr. 366-367). Treatment notes indicated Plaintiff had an upcoming appointment with a surgeon. Plaintiff was examined and assessed with chronic pain, anxiety, degenerative joint disease, back pain and neck pain. Dr. Isely refilled Plaintiff's medications.

On April 30 2015, Plaintiff was seen for a consultation regarding cervical radiculopathy. (Tr. 483-485). Plaintiff reported that his neck pain was made worse with neck movement. Plaintiff also reported upper extremity weakness and numbness. After examining Plaintiff, Candace Harper, P.A., assessed Plaintiff with cervical spine degeneration and cervical spinal stenosis. Ms. Harper noted that she would review Plaintiff's treatment plan with a surgeon.

Progress notes dated May 12, 2015, revealed Plaintiff was seen to discuss an upcoming surgery and to receive medication refills. (Tr. 364-365). Plaintiff was examined and assessed with chronic pain, neck pain, degenerative joint disease and back pain. Dr. Isely refilled Plaintiff's medications.

Progress notes dated June 12, 2015, revealed Plaintiff was having trouble with his prostate and urinating.  (Tr. 362-364).  Plaintiff reported his neurology appointment had been postponed for two weeks.  Upon examination, Dr. Isely noted Plaintiff appeared uncomfortable due to pain.  Plaintiff also exhibited neck and back tenderness with decreased range of motion. Dr. Isely assessed Plaintiff with urinary retention due to benign prostatic hyperplasia, chronic pain, prostatitis, neck pain and back pain and prescribed medication.

On July 1, 2015, Dr. Larry Armstrong noted that Plaintiff was initially seen for a cervical spine physical therapy evaluation.  (Tr. 470-472).  Plaintiff reported increased difficulty with his upper extremities which included dropping items and experiencing episodic weakness. Dr. Armstrong noted that conservative treatment had failed to improve Plaintiff's symptoms and he recommend surgical repair.

Progress notes dated August 27, 2015, revealed Plaintiff was seen for continuing pain and medication refills. (Tr. 361-362).  Upon examination, Dr. Isely noted Plaintiff exhibited neck and back tenderness with decreased range of motion. Dr. Isely assessed Plaintiff with chronic pain, back pain, degenerative joint disease, neck pain, anxiety and hypertension and prescribed medication.

Progress notes dated September 29, 2015, revealed Plaintiff's complaints of head and chest congestion.  (Tr. 360-361). Treatment notes indicated Plaintiff would see a neurologist in two weeks.  Upon examination, Dr. Isely noted Plaintiff appeared uncomfortable due to pain.  Plaintiff also exhibited congestion and neck and back tenderness.  Dr. Isely assessed Plaintiff with chronic pain and sinusitis and prescribed medication.

On October 8, 2015, Plaintiff underwent an Anterior Cervical Discectomy and Fusion (ACDF) at C5-7, performed by Dr. Larry Armstrong  (Tr. 468-469, 499-509, 520-530).

Progress notes dated October 14, 2015, revealed Plaintiff was in for a transition of care appointment following his hospitalization for neck surgery on October 8th.  (Tr. 358-359). Upon examination, Dr. Isely noted Plaintiff appeared uncomfortable due to pain.  Plaintiff's surgical incision was noted as healing well.   Dr. Isely assessed Plaintiff with postoperative back pain and prescribed medication.

On November 9, 2015, Plaintiff was seen for a follow up after his ACDF procedure. (Tr. 462-467, 510).  Plaintiff reported neck pain, upper extremity pain and worsening left arm pain but denied upper extremity weakness.  Ms. Harper opined that Plaintiff was progressing slowly and without good pain control.   Plaintiff reported that initially he experienced improvement of his symptoms following his surgery but had not noticed any further improvement.  Plaintiff reported he had been out of pain medication for two weeks.  Plaintiff reported he hit his forehead on a door jamb two weeks ago.  Plaintiff reported increased joint and back tenderness after his surgery.  Ms. Harper noted x-rays revealed stable alignment. Plaintiff was to return in one month for a follow up appointment.

Progress notes dated November 11, 2015, revealed Plaintiff had an irregular and high blood pressure.  (Tr. 357-358).   Treatment notes indicated Plaintiff was at a follow-up appointment with his surgeon and exhibited high blood pressure.  Dr. Isely noted that Plaintiff had also walked into a door frame and jammed his neck.  Upon examination, Dr. Isely noted Plaintiff appeared uncomfortable due to pain.  Plaintiff also exhibited tenderness in his neck

6

and back.  Dr. Isely assessed Plaintiff with hypertension, other chronic pain, other dorsalgia, unspecified osteoarthritis and cervicalgia and prescribed medication.

Progress notes dated December 15, 2015, revealed Plaintiff was in for a consult on medication and neck surgery.  (Tr. 356-357).  Plaintiff reported experiencing numbness in the upper extremities for the past three weeks.  Plaintiff also complained of continued back pain. Plaintiff reported he had a neurology appointment in two weeks.  Upon examination, Dr. Isely noted Plaintiff appeared uncomfortable due to pain and exhibited decreased sensation in the upper extremities.  Plaintiff also exhibited back tenderness.  Dr. Isely assessed Plaintiff with dorsalgia, unspecified; unspecified osteoarthritis, unspecified site; and paresthesias and prescribed medication.

Progress noted dated January 12, 2016, indicated Plaintiff was in for a prescription refill.  (Tr. 354-355).  Plaintiff reported progressive numbness in his hands and that he would be seeing a neurologist in the morning.  After examining Plaintiff, Dr. Isely assessed Plaintiff with chronic pain, degenerative joint disease and hypertension and prescribed medication.

Progress notes dated January 19, 2016, revealed Plaintiff's report that his medication was stolen. (Tr. 353).  Plaintiff reported that he filed a police report. Plaintiff reported that he was an every day smoker.   Upon examination. Dr. Isely noted that Plaintiff appeared uncomfortable due to pain.   Plaintiff was diagnosed with chronic pain, depression and hypertension. Dr. Isely noted that during the examination Plaintiff admitted to illicit prescription use after his medication was stolen.   Dr. Isely advised Plaintiff that he had breached his pain contract and could no longer be seen.

On March 1, 2016, Plaintiff was seen in the emergency room with complaints of bilateral abdominal pain radiating bilaterally down the legs. (Tr. 548-552). Plaintiff reported that he was on disability for his chronic back pain but had been unable to see his doctor. Treatment notes indicated Plaintiff ambulated with a steady gait to radiology. Plaintiff was assessed with midline back pain and abdominal pain and prescribed medication.

On March 18, 2016, Plaintiff was seen by Catherine L. Mustain, PA, to establish care. (Tr. 660-661). Plaintiff complained of neck and back pain. Upon examination, Ms. Mustain noted Plaintiff exhibited lumbar and cervical spine tenderness. Plaintiff was prescribed medication and encouraged to see a neurologist.

On May 11, 2016, Plaintiff was seen in the emergency room with complaints of dizziness. (Tr. 539-548). Plaintiff reported the dizziness started after working in the heat. Plaintiff indicated he had felt dehydrated while at work and drank Gatorade with no improvement. Plaintiff reported he had been hauling trash with his father. Upon examination, Plaintiff was found to have normal range of motion of the neck, normal musculoskeletal range of motion and no edema or tenderness. Plaintiff was admitted for dehydration and hyperkalemia. Plaintiff was treated and discharged the following day.

On May 17, 2016, Plaintiff was seen by Dr. Laurie Fisher for a follow up from a hospitalization. (Tr. 658-). Dr. Fisher noted Plaintiff had been hospitalized for kidney failure. Plaintiff reported that he had been trying to get on disability since 2011. Plaintiff indicated he was unable to work due to pins and rods in his neck. Plaintiff complained of neck pain, back pain and depression. Dr. Laurie noted Plaintiff was under a lot of stressors.

On May 26, 2016, Plaintiff was seen by Ms. Mustain. (Tr. 657-658). Plaintiff reported blood pressure problems, of not feeling well and going nuts. Plaintiff reported that he thought he would undergo back surgery once his daughter returned home. Plaintiff reported that he thought he was "losing his mind" when his truck was stolen when he went home on the 18th. Plaintiff reported he thought he was better with a "new" vehicle but was upset that the home he was renting to own was being sold out from under him. Plaintiff also complained of a worsening of his low back pain and "real bad" neck pain.

On June 2, 2016, Plaintiff was seen in the emergency room for neck and back pain. (534-538). Plaintiff reported he had fusion surgery on the neck the previous year and was supposed to have back surgery soon. Plaintiff reported he had not taken any medication for pain. Plaintiff was assessed with chronic neck and back pain and prescribed medication.

On June 27, 2016, Plaintiff reported upper extremity weakness and pain but no arm/hand numbness and normal balance. (Tr. 461, 686). Plaintiff was found to be regressing and without good pain control. Ms. Harper noted Plaintiff had undergone surgery in October of 2015, but this was only his second post-op visit as he had been without transportation. Plaintiff complained of increased upper left extremity pain with tingling and difficulty with extending the left elbow. Ms. Harper noted x-rays showed stable alignment. Due to there being a question of an abnormality posterior to C6, Ms. Harper noted she would have Dr. Armstrong review the record.

On July 12, 2016, Plaintiff was seen by Dr. Fisher. (Tr. 656-657). Plaintiff complained of neck pain and an inability to straighten his left arm. Plaintiff reported he had neck surgery in October of 2015. Prior to the surgery, Plaintiff reported right arm pain. After the surgery,

his left arm started to hurt while his right arm had less pain. Dr. Fisher noted Plaintiff was taking medication for his high blood pressure. Dr. Fisher noted Plaintiff had an MRI and Nerve Study scheduled for the end of July. Dr. Fisher told Plaintiff that she did not know if the elbow problem was orthopedic or from the neck. Plaintiff was prescribed medication.

On July 14, 2016, Dr. Jerry R. Henderson, a non-examining medical consultant, completed a Mental RFC Assessment opining that Plaintiff was moderately limited in some areas of functioning. (Tr. 70-72). On the same date, Dr. Henderson completed a Psychiatric Review Technique form opining that Plaintiff had mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence and pace; and no episodes of decompensation, each of an extended duration. (Tr. 66-67). On December 13, 2016, after reviewing the record, Dr. Jon Etienne Mourot affirmed Dr. Henderson's opinion. (Tr. 91, 96-97).

On July 25, 2016, Plaintiff underwent a MRI of the cervical spine. (Tr. 452-453). The study revealed multilevel spondylosis, mild to moderate canal stenosis and multilevel exit neural foraminal narrowing.

On July 29, 2016, Plaintiff was seen in the emergency room with complaints of neck and lower back pain. (Tr. 594-599). Plaintiff reported he underwent a MRI and a CT scan the previous Monday. Plaintiff also reported more left arm pain. Upon examination, Dr. Richard E. Daily noted Plaintiff had limited range of motion from pain in the neck with moderate spasm. Plaintiff was assessed with chronic neck pain and prescribed medication.

On August 7, 2016, Plaintiff was seen in the emergency room for chronic back and neck pain. (Tr. 591-594). Plaintiff reported he had an appointment scheduled with a pain

doctor next month.  Plaintiff reported difficulty sleeping due to neck pain.  Plaintiff also complained of leg pain.  Upon examination, Plaintiff exhibited decreased range of motion in his neck.  Plaintiff exhibited pain with straight leg raises but no tenderness in the lumbar back.  Plaintiff exhibited normal muscle tone.  Plaintiff was diagnosed with chronic neck and back pain and given medication.

On August 12, 2016, Plaintiff was seen at Northwest Arkansas EMG, for electrodiagnostic testing.  (Tr. 698).  Plaintiff complained of neck pain associated with left upper extremity pain, numbness, tingling and weakness.  Dr. Miles M. Johnson noted Plaintiff had a MRI on July 25, 2016, that revealed diffuse spondylosis with some moderate central canal stenosis at C6-7, mild-to-moderate at C3-4 through C5-6.  Upon examination, Dr. Johnson noted limited active range of motion in all planes of the neck.  Plaintiff's strength was 4/5 diffusely throughout the left upper extremity, somewhat limited by pain.  Dr. Johnson found no obvious atrophy and normal tone.  After examining test results, Dr. Johnson doubted Plaintiff's limited left elbow extension was related to his neck.  Dr. Johnson suggested that imaging studies of the elbow could be considered.

On September 12, 2016, Dr. Brett Alberty, a non-examining medical consultant, completed a RFC assessment opining that Plaintiff could occasionally lift or carry ten pounds, frequently lift or carry less than ten pounds; could stand and/or walk for a total of two hours; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; could occasionally climb ramps/stairs, climb ladders/ropes/scaffolds, balance, stoop, kneel, crouch and crawl; and that manipulative, visual and environmental limitations were not evident.  (Tr. 69-70).

11

On September 13, 2016, Plaintiff complained of left elbow pain and limitation. (Tr. 719). Plaintiff reported that he used to be a bricklayer so he used his arms quite a bit with manual labor. Plaintiff reported he was unable to pull his bow back for hunting. Plaintiff reported he had undergone a nerve study which was normal. After examining Plaintiff, Dr. Andrew D. Heinzelmann assessed Plaintiff with osteoarthritis of the left elbow. Plaintiff received a cortisone injection in the elbow and was encouraged to work on motion.

On September 15, 2016, Plaintiff was seen in the emergency room with complaints of left arm, neck and lower back pain since 2005. (Tr. 588-591). Plaintiff reported increased pain over the past two weeks. Plaintiff appeared agitated and was rambling about being denied disability. Plaintiff reported that he was unable to straighten his left arm completely and that no one would help him. Plaintiff became upset with questions from the examiner and left. Plaintiff's daughter screamed and cussed at the staff for not helping her father and left.

On September 22, 2016, Plaintiff was seen by Dr. Fisher. (Tr. 654-655). Plaintiff reported that he needed a MRI for Dr. Armstrong. Dr. Fisher noted Plaintiff had a very high blood pressure reading when he was in the emergency room. Plaintiff reported that he did not check his blood pressure at home. Plaintiff reported that he had been denied disability but was appealing the decision. Plaintiff complained of neck pain and back pain that caused weakness and numbness in his legs. Dr. Fisher noted Plaintiff was depressed and frustrated due to his pain and inability to get disability. Plaintiff agreed that counseling might help but declined medication. Plaintiff was prescribed medication and referred for a MRI.

On September 29, 2016, Plaintiff was seen by Dr. Fisher for his blood pressure. (Tr. 654, 704-705). Dr. Fisher noted that Plaintiff first reported that he took medication daily, but

later indicated that he could not always afford the prescription. Plaintiff thought his elevated blood pressure was due to his chronic low back pain. Plaintiff reported he had continuous neck, back and leg pain. Dr. Fisher assessed Plaintiff with essential hypertension, lumbago, noncompliance with therapy and chronic pain. Dr. Fisher agreed to a one-time prescription for hydrocodone for his back and started Plaintiff on gabapentin. After reviewing Plaintiff's MRI report, Dr. Laurie indicated she would see if Plaintiff wanted to be seen by neurosurgery.

On October 4, 2016, Plaintiff underwent a CT of the left elbow that revealed severe osteoarthritis of the left elbow preventing full extension due to osteophytes and multiple ossified bodies within the joint space. (Tr. 514).

On October 18, 2016, Plaintiff was seen in the Washington Regional Medical Center emergency room for an arm injury and a back injury. (Tr. 515). Treatment notes indicated Plaintiff left before full triage.

On October 18, 2016, Plaintiff complained of left elbow stiffness and arthritis. (Tr. 720-722). Plaintiff reported that the cortisone injection relieved his pain for one day. Upon examination, Dr. Jeff W. Johnson noted Plaintiff exhibited approximately thirty degrees less motion in his left elbow compared to his right elbow. Plaintiff exhibited a normal gait and station. Dr. Johnson assessed Plaintiff with moderate left elbow osteoarthritis, left hand numbness and tingling and a history of back and neck problems. Dr. Johnson recommended Plaintiff return in three to four weeks to discuss treatment options.

On October 18, 2016, Plaintiff entered the Summit Medical Center emergency room complaining of back pain. (Tr. 726-730). Plaintiff also complained of left elbow pain and reported he had seen Dr. Johnson earlier in the day. Upon examination, Dr. Patric Anderson

noted Plaintiff had good range of motion in his neck with no palpable tenderness. Plaintiff exhibited tenderness in the lumbosacral area. Plaintiff had pain in his left elbow with palpation and range of motion. Plaintiff was diagnosed with lumbar back pain and prescribed medication.

On October 27, 2016, Plaintiff complained of neck and back pain. (Tr. 448-). Upon examination, Dr. Brent Weilert noted the appearance of Plaintiff's neck was normal. Plaintiff exhibited tenderness of the lumbar spine at level 4-5. Plaintiff was found to have normal strength and tone in all motor groups. Plaintiff was found to have normal orientation, memory and attention. Plaintiff exhibited a normal gait and normal movements of all extremities. Plaintiff was diagnosed with disc degeneration, lumbosacral and cervical spine degeneration and prescribed medication.

On November 3, 2016, Plaintiff was seen by Ms. Harper for his back pain. (Tr. 445-447). Upon examination, Plaintiff exhibited tenderness at L3-5 and pain with flexion. Plaintiff was found to have a normal gait and station. Plaintiff exhibited normal strength in both lower extremities and normal muscle tone. Plaintiff was found to have a normal affect and recent memory was not impaired. Plaintiff was diagnosed with lumbosacral disc degeneration and a lumbar herniated disc. It was recommended that Plaintiff start with conservative treatment given that other treatment would involve fusion. Plaintiff was to start physical therapy.

A notation dated November 3, 2016, also indicated that Plaintiff was adamant that injections were not going to help. (Tr. 450). Plaintiff indicated that he wanted his lower back fixed. Dr. Weilert noted that Plaintiff would see neurosurgery the following week and gave

him a small amount of pain medication.  Plaintiff was also referred to Dr. Thurman for pain management.

On December 14, 2016, Dr. Jerry Thomas, a non-examining medical consultant, completed a RFC assessment opining that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; could occasionally climb ramps/stairs, climb ladders/ropes/scaffolds, balance, stoop, kneel, crouch and crawl; and that manipulative, visual and environmental limitations were not evident.  (Tr. 92-95).

After the expiration of insured status, Plaintiff was seen by Dr.  Mary F. Daut on January 17, 2017.  (Tr. 738-741).  Plaintiff reported chronic pain in the neck and lower back. Dr. Daut noted that Plaintiff was in her office the week before but left upset because she required a urine study.  Plaintiff reported he was now being considered for lumbar spine surgery.  Upon examination, Dr. Daut noted Plaintiff paraspinal musculature of the cervical and lumbar spine was tender to palpation  and range of motion was limited by pain.  Plaintiff exhibited normal range of motion without pain, normal tone and normal strength in all four extremities.  Plaintiff exhibited a normal gait and was able to stand without difficulty.  Plaintiff exhibited normal attention and concentration.   Plaintiff signed a pain contract and was prescribed medication.

## III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th

Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet

16

or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §404.1520.

**IV.    Discussion:**

Plaintiff argues the following issue on appeal: 1) the ALJ erred in determining Plaintiff's residual functional capacity.

**A.    Insured Status:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on December 31, 2016. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of November 22, 2014, his amended alleged onset date of disability, through December 31, 2016, the last date he was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB he must prove that, on or before the expiration of his insured status he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984).

**B.      Subjective Complaints and Symptom Evaluation:**

We now address the ALJ's assessment of Plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors.  A review of the record reveals that during the relevant time period, Plaintiff was able to take care of his personal needs slowly, to prepare simple meals, to drive a car, to shop for food, and to watch television. (Tr. 224-231).  The record revealed that in February of 2017, after Plaintiff's insured status had expired, Plaintiff revealed he experienced adequate pain control and was functional with daily activity and while not working could maintain his household.  (Tr. 742).

With regard to Plaintiff's alleged degenerative disc disease of the spine, the ALJ found that while Plaintiff may indeed have some limitations, the evidence did not support a finding of disability.  While Plaintiff may indeed experience some degree of pain due to his degenerative disc disease and pain, the Court finds substantial evidence of record supporting

18

the ALJ's finding that Plaintiff does not have a disabling spine impairment.  See Lawrence v.

Chater, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was

not disabled even though she had in fact sustained a back injury and suffered some degree of

pain).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he

has not established that he was unable to engage in any gainful activity prior to the expiration

of his insured status.  Accordingly, the Court concludes that substantial evidence supports the

ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### C.      The ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §

404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes

medical records, observations of treating physicians and others, and the claimant's own

descriptions of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005);

Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from

symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).  The

United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual

functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).

Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical

evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart,

353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a

claimant's limitations and to determine how those limitations affect his RFC."  Id.

In determining that Plaintiff maintained the RFC to perform light work with limitations,

the ALJ considered the medical assessments of the examining and non-examining agency

medical consultants; Plaintiff's subjective complaints; and his medical records.  The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of examining and non-examining medical professionals, and set forth the reasons for the weight given to the opinions.  Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).  After reviewing the entire transcript, the Court finds substantial evidence supporting the ALJ's RFC determination for the time period in question.

**D.      Hypothetical Question to the Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that prior to the expiration of his insured status Plaintiff's impairments did not preclude him from performing work as a palletizer, a machine egg washer, a housekeeping cleaner, and a toll collector. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V.    Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 8th day of March 2019.


/s/  *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE